Hunter *v.* Hunter.

---

MARIA B. HUNTER, petitioner,

*v.*

ARTHUR J. HUNTER.

[Filed November 12th, 1902.] ·

1. Where petition is made for an absolute divorce on the ground of desertion, promptly upon the expiration of an alleged residence in the state for the necessary two years, and where the desertion commenced while the applicant was a resident of a state whose laws do not grant an absolute divorce on that ground, a presumption is established against the existence of that sort of a residence necessary to give jurisdiction of the matrimonial *status* of the complainant.

2. The presumption that the residence has not been maintained *animo manendi* may be overthrown by an affirmative showing, either that the petitioner did not in fact move into the state for the purpose of securing a divorce after two years, or, if that was the motive, that there was also the further purpose of making the state a permanent residence, regardless of the outcome of the divorce proceedings.

3. The presumption that the residence has not been maintained *animo manendi* cannot be removed by the petitioner's uncorroborated testimony as to her motives, and a petitioner, whose testimony on that point was practically unsupported and consisted largely of conclusions of law, with no cross-examination, and where some of the answers indicated a mental reservation, did not prove such a residence as to give the court jurisdiction.

---

On petition for divorce on the ground of desertion.

Hunter *v.* Hunter.

*Mr. Charles C. Babcock,* for the petitioner.

STEVENSON, V. C.

The order of reference in this cause contained a special direction to the master, which probably he inadvertently has overlooked. The order directed the master to

"specially inquire and report what motives induced the petitioner to take up her residence in this state, what her occupation has been while residing in this state and where such occupation has been pursued, and generally as to the *bona fides* of petitioner's residence in this state."

The master has made no report according to this special direction. He appears to have recalled the petitioner and to have asked her a few questions upon the special subject above indicated, but the meagreness of the examination and the silence of the report in regard to it leave it open to doubt whether or not the master, in addressing these few interrogatories to the petitioner, considered that he was complying with this special direction of the order.

The case is one which calls for a thorough performance by the master of the requirement of the order of reference, and to that end the petitioner should be ready to produce all the evidence within her power until the measure of proof required in such a case is full.

The petitioner was married in the State of New York, in wihch state was the matrimonial domicile. In New York desertion is not a cause of absolute divorce. She remained a resident of New York after her marriage for a period of over ten years. Two years and a half after the original desertion or separation of the defendant occurred the petitioner claims to have abandoned her residence in New York, and established a permanent residence at Atlantic City, in New Jersey. Two weeks after the expiration of the statutory period of two years the petition in this case was filed.

While it is unnecessary at present to discuss at length the testimony so far taken in this cause, it may be profitable to point out that a large part of the case, including the jurisdiction of the court of the matrimonial *status* of the petitioner, is based

Hunter *v.* Hunter.

upon the petitioner's testimony alone. Much of this testimony, also, comes in response to questions which are more or less leading. No independent witnesses, who can speak with apparent knowledge of the facts, are produced to show that the petitioner has continuously resided in Atlantic City; that she has established any permanent business there, or formed any social or other ties which usually would be created by a woman who broke away from a residence in one state and moved, with her sons, into another, with intent to abide permanently.

The two sons of the petitioner, by a former marriage, who certainly cannot be far from an adult age, and who, the petitioner swears, accompanied her to Atlantic City and live there with her, are not sworn as witnesses on her behalf. What is even more noticeable is the fact that the petitioner, after testifying to what are practically conclusions of law to establish the necessary residence in the state, is not cross-examined in regard to any one of the numerous details of life, the disclosure of which always throws light upon the nature and contemplated duration of any residence which is under judicial investigation. The petitioner may intend to be absolutely truthful in answering the most important questions which were put to her, and yet she may have answered them erroneously. Sometimes she qualifies the expected answer to a leading question in a very suggestive way. This leading question was put, "And have you been keeping a boarding-house since you came here to reside?" and the answer is, "Yes, since 1899—*off and on.*"

To the question, "Is it your intention to reside permanently in Atlantic City?" the petitioner answers, "Yes, *so far as I know.*"

This court is practically asked to act upon the petitioner's uncorroborated testimony to the effect that, in her judgment, as a correct conclusion of law and fact, she has maintained a permanent residence, *animo manendi,* in the State of New Jersey since July, 1899.

One witness, it is true, was brought to corroborate the petitioner, and this witness testifies that the petitioner had been living in Atlantic City since July, 1899. But as this witness testified that he resided in Philadelphia, and did not indicate

in the slightest degree what·the sources of his knowledge were in regard to the petitioner's residence in Atlantic City, the deposition seems to be entitled to very little, if any, weight.

My conclusion in this case is that the petitioner has failed to show, by sufficient testimony, that she has maintained such a residence in New Jersey as is necessary, under our statute, to give the court of chancery jurisdiction of her matrimonial *status;* that her own testimony, even if it had been more ample and in a better form, would have required corroboration, under a safe rule of evidence.

The court of chancery has to deal with a large and increasing class of divorce cases, which uniformly present the following facts:

*First.* Desertion commenced in a state of which the complainant and defendant are both residents, and in which desertion is not a ground for absolute divorce.

*Second.* The establishment, by the complainant, after the desertion has commenced, of some sort of a residence in the State of New Jersey, and the maintenance of that residence, or the alleged maintenance of it, for the term of two years.

*Third.* Prompt application, at the end of the two years, to the court of chancery for an absolute divorce, on the ground of desertion, as a complete matrimonial offence, committed in New Jersey.

From these facts the inference is drawn that the complainant established and maintained his residence in New Jersey for the purpose of doing the very thing that he did with his residence, viz., using it as a means of obtaining an absolute divorce at the end of two years. The further inference is natural that, as the purpose which actuated the complainant in establishing his residence in New Jersey was to accomplish a transient object, the contemplated duration of the residence was also transient.

Hence, where the facts above stated appear, a presumption is established against the existence of that sort of a residence which is necessary to give the court of chancery of New Jersey jurisdiction of the matrimonial *status* of the complainant. This presumption, however, is not irrebuttable; it may be overcome by the requisite amount of proof.

Hunter *v.* Hunter.

Formerly there may have been room for doubt as to whether, when the purpose of the complainant in coming into the state, as declared by him or inferred from the facts, was that he might obtain a divorce, his residence so established could, on grounds of public policy, be brought within the meaning of our Divorce act. This whole subject is covered and the decisions on the subject cited in the opinion of the present chancellor in *Sweeney* v. *Sweeney, 17 Dick. Ch. Rep. 357.*

It was not intimated by me, in the case of *Grover* v. *Grover, 18 Dick. Ch. Rep. 771,* that a residence established for the purpose of founding a divorce suit may not, in fact, be a permanent residence, established and maintained *animo manendi.* A man may certainly acquire a permanent residence, intending to maintain it during his whole life, from a motive which is entirely transient. A resident of New York may be able, conveniently, to break his residence there and establish a permanent residence in New Jersey, when it would be extremely inconvenient or difficult for him to return to New York after two years or any other period, and he may therefore have no such intention. While the underlying motive for establishing a residence in New Jersey may be the intention to apply for a divorce to the courts of New Jersey at the end of two years, there is no reason why the further intention may not exist, *bona fide,* to reside continuously and indefinitely in New Jersey after the expiration of the two years, whether the desired divorce is obtained or not. The existence of one purpose, which is accomplished in a brief period, does not necessarily exclude another purpose, which endures indefinitely. Everyone must live somewhere, and it is a matter of common experience that the most trivial circumstances frequently determine the place where a man intentionally fixes his abode for life.

But any doubt in regard to the correctness of this view, it seems to me, has been removed by the opinion of the court of errors and appeals in the case of *Tracy* v. *Tracy, 17 Dick. Ch. Rep. 807,* and especially by the opinion of that court in the case of *Grover* v. *Grover, 52 Atl. Rep. 1131.*

We have, therefore, I think, the doctrine firmly established that, in a case presenting the three facts above specified, a presumption is established that the residence of the complainant in

this state has not been a permanent one, maintained during the two years *animo manendi,* so as to give the court of chancery jurisdiction of his matrimonial *status,* but that this presumption may be overcome by evidence.

The question is whether there is any rule, founded upon public policy or otherwise, in regard to the amount or character of evidence which must be adduced in order to rebut this presumption. The burden is certainly upon the complainant who exhibits these facts as a part of his case, from which the presumption against the permanency of his residence arises, to remove that presumption; or, in other words, to show affirmatively either that he did not, in fact, move into the state for the purpose of obtaining a divorce after two years, or that, if he had that purpose, he also had the further purpose, superimposed upon, or associated with, this confessed purpose, of residing permanently in the state, whether he obtained a divorce or not.

In the case of *Grover* v. *Grover, 18 Dick. Ch. Rep. 771,* I expressed the opinion that, in the class of cases under consideration, the uncorroborated testimony of the complainant is insufficient to remove the presumption against him in regard to the intention and purpose of his residence in New Jersey which he has established by his own case—which is inferred, as above stated, from the facts which he has shown to the court. In view of the opinion of the court of errors and appeals in that case, some further discussion of the subject may be of use.

In the case of *McShane* v. *McShane, 18 Stew. Eq. 341,* the broad rule was laid down in the opinion of the advisory master that a divorce would "not be granted upon the unsupported testimony of petitioner as to residence in this state and as to the causes of the alleged desertion"—thus making the rule requiring corroboration of the testimony of the complainant apply, not only to the matrimonial offence, but also to the jurisdictional fact of residence. This case was unanimously affirmed by the court of errors and appeals, for the reasons given by the advisory master. It would seem, therefore, that the rule is firmly established that each of the two main propositions of every divorce suit must be established by more than the evidence of the complainant, who is testifying in order to obtain a divorce.

But the application of this rule to the special class of divorce cases now under consideration is very different from its application to other ordinary divorce cases. Whatever may be the facts about the complainant's residence upon which the jurisdiction of the court is founded—whether the divorce suit has been brought by a person who has lived in New Jersey all his life, or by one who has come from New York two years and a day before the suit was commenced—the complainant in every cases testifies to the matrimonial offence in order to win his cause; he must prove the offence, or he loses his cause, and he therefore testifies under the strongest possible inducements to deceive himself and the court. This is the obvious reason for discrediting the complainant's testimony in regard to the matrimonial offence in every divorce suit, and requiring corroboration of it as the basis of a decree.

When the rule requiring corroboration is applied to the proof of the jurisdictional fact of residence, it is plain that it does not apply with equal force to all kinds of cases—that it must have a special application to the particular class of cases presenting the facts enumerated above. In the case of a complainant who testifies that he was born in New Jersey and has lived in New Jersey all his life continuously, or that he came from New York to New Jersey thirty or forty years before he commenced his suit and has lived here ever since, corroborative testimony will naturally relate largely to the physical facts of the complainant's commorance within the state all his lifetime or during a long period of time. When the complainant has told his story under oath, no presumption is created thereby that his residence in New Jersey is transient.

In the case of a complainant applying to the court of chancery of New Jersey for an absolute divorce on the ground of a matrimonial offence of any kind which is recognized as a cause of absolute divorce by the laws of the state from which he has recently come, his temptation to foist his case upon the State of New Jersey and procure a divorce here is certainly less than that which would assail him if he were powerless to get his desired release in the state in which he was recently domiciled. A complainant with a cause of absolute divorce, recognized as

such by the laws both of New York and of New Jersey, might even be exceedingly anxious to have his suit brought in that state where it could be made to appear most plainly that his residence was situated. In such a case he might be deeply interested in having no mistake made as to the state and the court in which he brings his cause.

But in the special class of cases which we are considering, both the amount and the exact character and force of the corroborative testimony seems to call for special attention and regulation.

*First.* As to the amount of corroborative evidence. We have seen that in these cases the complainant produces the testimony which establishes a presumption that his residence was transient; was established for the purpose of obtaining a divorce at the end of the two years, and was not established for any other purpose. He then offers his own oath to overcome this presumption. Would it not seem reasonable that stronger corroboration of the complainant's testimony is necessary in such a case than in an ordinary case, where the complainant apparently has no motive for bringing his suit in the wrong state, and stands before the court without any presumption against the permanency and *bona fides* of the residence to which he has testified? The complainant is testifying, not in regard to physical facts alone, but principally in regard to his own mental state, in regard to which he naturally feels secure against contradiction. With practical immunity against prosecution for perjury, he testifies under the same constraining influence of his great interest, and under the same temptation to deceive himself and the court under which the complainant testifies in every divorce suit in regard to the matrimonial offence. It seems to me that the complainant's testimony in regard to his residence has less force and requires more corroboration in this particular class of divorce cases than in any other.

*Second.* As to the exact character of the corroborative evidence—the point to which it should be directed. In all these cases where the complainant stands upon a residence which he has maintained on this side of the Hudson river for just two years, the vital question is, with what intent has he so maintained such residence? He establishes the presumption, as we

have seen, by the evidence which he himself produces, that his residence was not a permanent one, such as to give our courts jurisdiction of his matrimonial *status.*

Is it not plain that what must be demanded in this case is corroborative evidence to strengthen the probative force of the complainant's oath in regard to this all important question of intention? In *Grover* v. *Grover* I expressed the opinion that the complainant could not remove the presumption against the permanency of his residence, established by himself, in this class of cases "solely by his own testimony in regard to his motives, purposes and intentions," and, upon a careful reconsideration of the subject, the rule appears to me to be only a useful and special application of the general rule. long ago established by the court of errors and appeals in the case of *McShane* v. *McShane, supra.*

The case of *Tracy* v. *Tracy, 15 Dick. Ch. Rep. 25, 28,* decided by Vice-Chancellor Pitney, is a typical one of the class under consideration. The complainant (the deserted wife) left her domicile in New York and came to New Jersey on May 18th, 1897, and filed her petition for divorce on May 25th, 1899. She testified that "she had no thought of getting a divorce when she came here, and that she intended to live and make her home here." The learned vice-chancellor expressed the opinion that, "under the circumstances, the mere sworn assertion by the party that he or she came to New Jersey without a thought of getting a divorce, and intends to make New Jersey his or her home," is not "sufficient to establish the *animus manendi* which is necessary to give the court jurisdiction." The divorce, therefore, was denied.

This decision was reversed by the court of errors and appeals (*Tracy* v. *Tracy, 17 Dick. Ch. Rep. 807*), but it does not appear that the rule of evidence which Vice-Chancellor Pitney applied was rejected by that court. The higher court seems to have found that the testimony of the petitioner was corroborated; that her testimony was "consistent, clear and relevant," and did not bear any intrinsic evidence of improbability, and that it "was sufficient, *after the other testimony produced,* under the statute, to establish her residence here."

What is corroboration or sufficient corroboration plainly could not be defined by any rigid rule or by any rule which would be

Hunter *v.* Hunter.

valuable. Where the petitioner's story as to her residence in the state is "consistent, clear and relevant," and without any "evidence of improbability," the absence of contradiction of this story or of doubt cast upon it, after disinterested persons, who have been the witnesses of her residence, have given their testimony, may of itself, in some cases, be deemed sufficient corroboration.

Th practical value of a special rule in this particular class of cases requiring the complainant's testimony to be corroborated lies largely in this result—that the complainant will be forced to bring into court the persons who have been the natural witnesses of his or her life during the two years in question. The examination and cross-examination of such witnesses, in a large number of cases, will afford a conclusive test of the character of the complainant's residence.

Great light will probably be thrown upon the question of the character of Mrs. Hunter's residence in Atlantic City during the last two years, while she has been keeping a boarding-house there, "off and on," if she produces, as witnesses in her case, some of the disinterested citizens of Atlantic City who must have been aware of her residence among them.

There is no hardship in this proposed rule of evidence. Cases arise occasionally where it is extremely difficult, if not impossible, to produce evidence of the matrimonial offence to corroborate the testimony of the complainant in regard to it, especially in some instances of desertion. But it is hard to imagine a case where the fact of a person's residence in New Jersey for two years prior to the commencement of a divorce suit, and the true character of such residence, cannot be, in part at least, proved by witnesses who have no interest in the result of the suit.

As the proofs stand, the petition should be dismissed, but inasmuch as the insufficiency of the proofs may have been, in part, due to the failure of the master to discharge his duty, under the order of reference, the petitioner may, if she so desires, take an order referring the case back to the master, in order that he may inquire in accordance with the views indicated above, and also report in regard to the matters specially submitted to him for investigation.