The bill under criticism recites, in effect, that the parties were married and lived in the city of New York for a period of more than twenty years and until the defendant left that jurisdiction, as hereinafter recited. On May 21st, 1926, the complainant secured a judgment in the New York supreme court divorcing the parties from bed and board and allowing to the complainant, for the support of herself and her children, the sum of $55 per week. Such payments were made by the defendant until September 19th, 1927, whereupon they ceased, and shortly thereafter the defendant left the jurisdiction of the New York court. On October 28th, 1927, complainant was served with a complaint in a proceeding instituted by the defendant in one of the courts of the republic of Mexico. Thereafter, at a date not specified, the defendant obtained a judgment or decree of the said Mexican court divorcing him from the complainant. Almost immediately thereafter (for he had been discovered and the bill filed on or about February 18th, 1928), the defendant left Mexico, went to Newark, New Jersey, and there re-established himself in the practice of his profession and began to live with another woman.
The bill recites, as all statements now being made are recited therein, that the defendant represented to the court of Mexico that the complainant was at that time a resident of New York and he (the defendant herein) a resident of a city in Mexico, "although, in fact, he was a citizen of the United States of America and then resident in the city, county and State of New York."
The defendant is a licensed physician who has practiced his profession for twenty-three years, and is said to have earned therefrom an annual income of between $40,000 and $50,000 before the separation of the parties. It is charged that he expelled his wife from his residence on February 7th, 1925, and has ever since refused to live with her or support her and the children.
Certain allegations are then made of conduct and statements by the defendant intended as a foundation for a motion to secure a writ of ne exeat and certain other allegations reflecting *Page 28 
upon the character of the defendant as a husband and father, and the usual protestation of poverty on the part of the defendant.
The prayers are seven in number — first, for answer;second, for alimony and maintenance; third, for security for the payment thereof; fourth, for a writ of ne exeat; fifth, for the arrears of alimony under the New York judgment; sixth, for counsel fees, and seventh, for process.
The notice has a double aspect, and asks (a) that the bill be dismissed because it discloses upon its face the Mexican decree without alleging any infirmity therein, and (b) because there is no prayer for a decree declaring the Mexican decree void.
It would appear that counsel for the proponent misconceives the manner in which an attack upon an existing instrument should be pleaded. It certainly requires neither argument nor the citation of authorities to prove that relief is to be afforded from the facts properly pleaded in a bill such as this, and not upon conclusions of the pleader. As I read counsel's brief, his quarrel with the bill is because it contains no such general statement as, for example, that it (the Mexican decree) is fraudulent and void and of no effect. Clearly, any such statement in the bill would have been the plainest kind of a conclusion, and the very conclusion which the complainant seeks to have the court draw from the facts of which a synopsis has been given above. The defendant advances the language of the chancellor inFeickert v. Feickert, 98 N.J. Eq. 444, as authority for his position in the attack on the bill. In that case, when an application was made ex parte for an order of reference, it came to the attention of the chancellor, not from the petition for divorce therein, but otherwise, that the defendant therein appeared to have secured a divorce from some tribunal of competent jurisdiction in Nevada dissolving his marriage. The chancellor, as the representative of "that invisible third party to all divorce suits," said that he could not close his eyes to the existence of a judgment of a sister state that was in no way impeached. He said (at p. 451) that it was the duty of Mrs. Feickert to plead the decree "and allege that it is fraudulent and void and no impediment *Page 29 
to this court granting her a decree of divorce." From the language quoted, counsel appears to draw the belief that there is some magic in the phrase used by the chancellor. He, of course, was talking as one lawyer to another, and expected that his language would receive the technical, legal meaning in which it was intended. In other words, he meant that the pertinent facts surrounding the obtaining of the decree should be laid before the court so that there might be presented an issue upon which that defendant could join issue and prepare for his defense.
This is just what the bill of complaint has accomplished. It has set forth certain facts connected with the defendant and his obtaining the Mexican decree, and asks the court to deduce from these the judgment that the decree was procured by fraud. To have added the bald statement that it was so procured would not only have been without any virtue, but would have been repugnant to one of the canons of good pleading.
It remains to be seen whether or not the facts pleaded could support proofs from which a judgment could logically be drawn that the decree in question was so tainted as to be of no force and effect. It seems to me that the facts are quite as strong as those upon which the court of errors and appeals impeached the decree considered in Magowan v. Magowan, 57 N.J. Eq. 322. In that case, although the decree of the court in Oklahoma divorced the parties, and, therefore, raised a presumption of compliance with all the requirements of the Oklahoma law, the court of errors and appeals determined from the facts presented that the decree must have been obtained, either by withholding from the other court the real facts or by the submission of false testimony. In the case at bar it would be unfair to the courts of Mexico to presume that one of them would have adjudicated this defendant to have been a bona fide rsident if it had been shown to that court that the defendant had resided in the city of New York and practiced his profession with great success for a period of more than twenty years, had then abandoned his wife and children and been convicted thereof by a court of competent jurisdiction in the state of his residence, had *Page 30 
thereafter defaulted in the duties laid upon him by that judgment, and, after acts and statements upon his part fore-shadowing what was to come, had then abandoned his valuable practice and left the jurisdiction of New York and journeyed to Mexico, where he sojourned just long enough to secure the coveted decree, when he left the jurisdiction of Mexico and returned, not to his domicile in the shadow of the New York Supreme Court, but to the city of Newark in this state, where he took up his residence with another woman. In short, if the facts pleaded in the bill are true he must have either willfully withheld evidence from the Mexican court or imposed upon it untrue proofs.
The defendant must fail upon the other ground of his motion. The complainant could not have properly prayed for a decree declaring the judgment of the Mexican court to be void. Floyd
v. Floyd, 95 N.J. Eq. 661. In that case the parties had been residents of the State of Pennsylvania when the wife separated herself from her husband and went to Nevada where she secured a decree of divorce. Later on, she became a resident of New Jersey, and the husband, who was still a resident of Pennsylvania, filed a bill in this court attacking the validity of the Nevada decree. It was decided that because of their residence in Pennsylvania at the time of the separation the res was in that state and not here. Consequently, there was nothing which this court could grasp as a foundation for any such suit. That is exactly the situation presented here. This woman who, together with her husband, was resident in the State of New York at the time it is alleged the fraud was committed, cannot follow her husband into this state to ask relief from an alleged fraud that was perpetrated, not upon the courts of this state, but upon those of the State of New York.
Finally, there is no question of comity, because it is universally the law that effect will not be given to any judgment of a foreign state that is infected by fraud.
An attack is also made in the brief filed on behalf of the defendant upon the prayer for arrears of alimony under the New York judgment, because, it is argued, being divorced, the complainant has a complete and adequate remedy at law. *Page 31 Bennett v. Bennett, 63 N.J. Eq. 306. This would be unanswerable except for what has been said concerning the allegations against the Mexican decree. The present state of the record, indicating that the decree is invalid, destroys the argument of the defendant herein in this respect.
Finally, it is argued that this defendant had a perfect legal right to change his domicile and with it his residence, and no one will deny that this is so. My difficulty is to convince myself that he had any such intention at the time he entered Mexico, so far as making any portion of that country his fixed and legal residence. Surely one may take notice of the increased number of unhappy spouses who are constantly gathering in certain jurisdictions where marriages are dissolved upon grounds not recognized in the respective jurisdictions in which they have previously spent their lives. It is equally notorious that immediately upon receipt of the decrees they seek, they almost universally find that their new surroundings have lost all attraction and thereupon return to places that have previously been their homes, except in a case like the present one where there exists an awkward judgment, or a threat of one, which cannot be overcome. I know of no case which appears clearer than the one made out by the facts in the bill, if they are true.
The very authorities upon which the defendant relies support the statement just made. For example, in 19 C.J. 370 § 836, the concluding clause on this subject is — "he is free to change at his pleasure, provided the change is a bona fide one, and a divorce so acquired will be recognized in the state of his former domicile." In Magowan v. Magowan, supra, the court of errors and appeals stressed the necessity of the element of the animusmanendi in the establishment of a new residence, citing Harral
v. Harral, 39 N.J. Eq. 279. The reason for believing (from a reading of the bill) that there was no such intention have already been given. Vice-Chancellor Stevenson, in Hunter v.Hunter, 64 N.J. Eq. 277, said that where a party files a petition promptly upon the expiration of the statutory period of residence required, when he has come from a jurisdiction that does not recognize as a cause for divorce the one upon which he relies, a presumption *Page 32 
arises against the honesty of his residence here. The defendant in this case appears to have instituted his proceedings for divorce in Mexico within a month of the time he left New York. Of course, he may be able to show that there were circumstances which occurred after the commencement of his action that left him no more a free agent and necessitated his taking up his domicile in this state. But I cannot conjecture them from anything appearing in the bill. He will have to plead and prove them.
The motion should be denied. Inasmuch as only the motion to strike has been argued, and the argument on the merits of the order to show cause has been withheld, the latter may be brought on on any motion day.