AUGUSTUS W. DOLL *vs.* WILLIAM P. EARLE and MARY
E. EARLE, executors &c. of Morris Earle, deceased.

A voluntary payment, made on a claim of right, and under no misapprehension
or mistake of fact, cannot be recovered back.

It is well settled, in this country, that where there is no mistake of fact, a
voluntary payment, though made under a mistake of law, cannot be revoked.

The defendants held a mortgage for $8,000 and interest, executed September
27, 1860, and payable in three years from date, on premises in the city of
New York. The plaintiff having become the owner of the premises, he, on
the 14th of April, 1870, desired to pay the mortgage, in legal tender cur-
rency, but the holders demanded gold; whereupon the parties entered into
a written agreement that the sum of $985, being the difference between the
value of gold coin and legal tender currency, on the amount of the mort-
gage, should be deposited by the plaintiff in a trust company, in the names
of the parties; that it should be forthwith submitted to the Supreme Court
of New York, to determine the question whether the mortgage was payable
in gold or paper currency. Subsequently the parties agreed that the sub-
mission to the court should be delayed until after the decision by the Su-
preme Court of the United States of the so-called legal tender cases; and in
case such decision should amount to a reversal of the decision in *Hepburn* v.
*Griswold*, the plaintiff should be entitled to the sum so deposited. The
Supreme Court of the United States followed the decision in *Hepburn* v.
*Griswold*, and on the plaintiff's order the deposit was paid to the defendants.
Afterwards the Supreme Court of the U. S. held that the legal tender act
was constitutional, and that it applied to contracts made before, as well as
after its passage. *Held* that the plaintiff could not recover back the money
thus paid to the defendants.

That as, at the time the payment was made, both the Supreme Court of the
United States, and the Supreme Court of New York, had decided against the
constitutionality of the legal tender act as it respects contracts made before
its passage, the contingency had arisen, on the happening of which the par-
ties had agreed the money should be paid over by the trust company to the
defendants; and the payment thereof was voluntary, made on a claim of
right, and under no misapprehension or mistake of fact.

SUBMISSION of a controversy, by the parties, with-
out action, under the Code, (§ 372.)

*Richard S. Newcomb*, for the plaintiff.

*B. F. Lee*, for the defendants.

Doll *v.* Earle.

*By the Court,* FANCHER, J.   This is a controversy submitted under the Code, without action.   The defendants held a mortgage for $8,000 and interest, executed the 27th of September, 1860, by Rialdo Dorman, on premises in the city of New York, which was payable, with interest, on the 27th of September, 1863.   Doll, the plaintiff, became the owner of the premises prior to the 14th of April, 1870, on which day he desired to pay the mortgage in legal tender currency, but the holders demanded gold.   On that day the parties entered into a written agreement, by which, after proper recitals, it was agreed that the sum of $985, being the difference between the value of gold coin and legal tender currency on the amount of the mortgage, should be deposited by Doll in the Union Trust Company, in the names of the parties ; that it should be forthwith submitted to the Supreme Court of the State of New York, to determine the question whether the mortgage was payable in gold or paper currency ; and the agreement contained the following provision :

"If it shall be finally judicially determined that the same is payable in gold coin, then said sum of nine hundred and eighty-five dollars, so deposited as aforesaid, shall belong to the parties of the first part, and shall be by them drawn from said trust company, with all the interest accumulated thereon.   If it shall be finally judicially determined that the said sum secured by said bond and mortgage, is payable in said paper currency, then said sum of nine hundred and eighty-five dollars, shall belong to the party of the second part, and shall be, by him, drawn from said trust company, with all the interest accumulated thereon."

Thereafter, the parties agreed that the submission to the Supreme Court of the State of New York, should be delayed, until after the decision by the Supreme Court of the United States of the so-called legal tender cases, should be rendered ; and in case such decision should

amount to a reversal of the then late decision in *Hepburn* v. *Griswold*, the party of the second part should forthwith be entitled to the said sum so deposited in the trust company.

The Supreme Court of the ¡United States followed the decision in *Hepburn* v. *Griswold*, and, on the 25th of January, 1871, the attorneys of the defendants addressed a letter to the attorney of the plaintiff, concerning the subject. Thereupon, Doll, the plaintiff, signed an authority to the trust company to pay the money and interest to the defendants, and the same were accordingly, on the 27th of January, 1871, paid by the trust company to the defendants.

Subsequently, the Supreme Court of the United States granted a re-argument in the legal tender cases, and finally decided that the legal tender act was constitutional; holding that it applied to contracts made before its passage as well as to those made afterward. (*See* 12 *Wall.* 457.)

The principal question submitted, is whether the plaintiff can now recover back the money thus paid to the defendants?

We are of the opinion that he cannot. At the time the payment was made, both the Supreme Court of the United States and the Supreme Court of the State of New York, had decided against the constitutionality of the legal tender act as it respects contracts made before its passage. (*Hepburn* v. *Griswold*, 8 *Wall.* 603. *Cram*, *ex'r*, v. *Webb*, *Gen. T. of N. Y.*, Nov. 1870.) The contingency had, therefore, arisen, on the happening of which the parties had agreed the money should be paid over by the trust company to the defendants. The payment was voluntary, and made on a claim of right, under no misapprehension or mistake of fact; and money paid under such circumstances cannot be recovered back. (*N. Y. & Harlem R. R. Co.* v. *Marsh*, 12 *N. Y.* 308. *Champlin* v. *Laytin*, 18 *Wend.* 407. *Fleetwood*

v. *City of N. Y.*, 2 *Sandf.* 475. *Clarke* v. *Dutcher*, 9 *Cowen*, 674. *Mowatt* v. *Wright*, 1 *Wend.* 356. *Sups. of Onondaga* v. *Briggs*, 2 *Denio*, 26. *Wyman* v. *Farnsworth*, 3 *Barb.* 369. *Forrest* v. *Mayor &c.*, 13 *Abb.* 350.)

The remarks of Chancellor Kent, in *Lyon* v. *Richmond*, (2 *John. Ch.* 60,) are applicable here. He said : "A subsequent decision of a higher court, in a different case, giving a different exposition of a point of law from the one declared and known, when a settlement between parties takes place, cannot have a retrospective effect and overturn such settlement. The courts do not undertake to relieve parties of their acts and deeds fairly done, on a full knowledge of facts, though under a mistake of the law. Every man is to be charged, at his peril, with a knowledge of the law. There is no other principle which is safe and practicable in the common business of mankind. And to permit a subsequent judicial decision in any one given case, on a point of law, to open or annul everything that has been done in other cases of the like kind, for years before, under a different understanding of the law, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society, there is no such pernicious precedent to be found." This case was reversed on appeal to the court of errors, (but on grounds not affecting the above doctrine,) by a majority of one. The reversal was distinctly put on the ground that the complainant's assent to the settlement in question was obtained "under circumstances of such fraud and oppression as to render the assent nugatory and void." (*Lyon* v. *Tallmadge*, 14 *John.* 512, 515. *See opinion of Peckham, J., Jacobs* v. *Morange*, 47 *N. Y.* 60. *See, also, Sturges* v. *U. S., Devereux*, 20 ; *Morton* v. *Ostrom*, 33 *Barb.* 262, *and cases cited ; Will. Eq. Jur.* 68 ; *Storrs* v. *Barker*, 6 *John. Ch.* 166 ; 1 *Story's Eq.* § 120.)

There was no mistake either of law or fact when the payment was made. All that can be said is, that by a

Doll *v.* Earle.

reconstruction of the court, the introduction of new judges occasioned a different decision of a question from the decision of the same question at a former time. If it were conceded that the latter decision was correct, and the former decision was an incorrect exposition of the law, still it is well settled that relief cannot be had for a mistake of law, where a voluntary payment has been made. It has sometimes been said that ignorance of the local law of another State or country, is equivalent to ignorance of a fact, (*Havens* v. *Foster,* 9 *Pick.* 112; *Cockerell* v. *Clolmelly,* 1 *Rus. & Myl.* 418;) but there was no mistake of that character when the payment in this case was made.

The doctrine is well settled, in this country, that a voluntary payment, where there is no mistake of fact, though made under a mistake of law, cannot be revoked. (*Jacobs* v. *Morange,* 47 *N. Y.* 57. *Elliott* v. *Swartwout,* 10 *Peters,* 137. *Hunt* v. *Rousmanier,* 1 *id.* 15. *The Bank of U. S.* v. *Daniel,* 12 *id.* 32. *Shotwell* v. *Murray,* 1 *John. Ch.* 512. *Sims* v. *Lyle,* 4 *Wash. C. C.* 320. *Gilbert* v. *Gilbert,* 9 *Barb.* 532. *Arthur* v. *Arthur,* 10 *id.* 9, 16. *The Chesapeake and Ohio Co.* v. *Dulaney,* 4 *Circ. C. C.* 85.)

There should be judgment for the defendants, with costs.

[First Department, General Term, at New York, May 5, 1873. *Ingraham* and *Fancher,* Justices.]