GEORGE GRAVENHORST and Another, Copartners Trading under the Firm Name of GRAVENHORST & COMPANY, Appellants, *v.* JOSEPH B. TURNER and Others, Copartners, Doing Business under the Firm Name and Style of TURNER BROTHERS, Respondents.

Second Department, January 22, 1926.

Brokers — commercial brokers — action to recover damages from brokers based on failure to make contract of sale of sugar for plaintiffs which brokers reported had been made — plaintiffs purchased sugar on faith of brokers' alleged contract of sale — brokers liable for expense of litigation against alleged buyer in which complaint was dismissed on ground that no contract was made — brokers liable for loss on sugar — determination of referee has every presumption in its favor — findings properly made on granting nonsuit at close of plaintiffs' case — plaintiffs made out prima facie case — damages — evidence fails to show that sugar for future delivery could have been sold at current price — sale was to be made on c. i. f. letter of credit contract — usual form of such contract was implied — defendants negligently failed to make proper entries in their books to bind purchaser — judgment dismissing complaint reversed and new trial granted.

In an action to recover from commercial brokers damages based on their failure to make a contract for the sale of sugar for plaintiffs which they reported had been made, on the faith of which report the plaintiffs purchased the sugar for future delivery according to the terms of the contract of sale, the plaintiffs are entitled to recover the cost of a litigation against the alleged purchaser in which the complaint was dismissed on the ground that no contract was made by the brokers with them for the benefit of the plaintiffs.

The brokers are liable also for the loss occasioned the plaintiffs by reason of their failure to make a binding contract of sale, which they reported they had done.

The determination of the referee dismissing the complaint at the close of the plaintiffs' case is entitled to every presumption in its favor.

The referee acted properly in making findings upon the granting of a nonsuit at the close of plaintiffs' case.

The findings by the referee are in part contradictory and in part not supported by the evidence, but accepting the findings supported by the evidence and rejecting contradictory findings and those that do not find support in the evidence, the plaintiffs made out a *prima facie* case and it was error for the court to dismiss the complaint.

The evidence fails to show that the sugar which was bought for future delivery could have been sold at the current price at the date of first delivery so as to prevent any damage resulting.

The sale was to be made to the alleged purchaser on a c. i. f. letter of credit contract and it cannot be contended that the contract presented contained essentially different terms, since it appears that the contract presented was the usual form of contract used in the trade. Where a certain form of contract is used in the trade, and is known by a definite name, a reference to that name implies that the form which it represents is the form contemplated by the parties.

The defendants negligently failed to make proper entries in their books to bind the alleged purchaser and they are liable for their negligence in this respect.
The judgment dismissing the complaint must be reversed and a new trial granted.

APPEAL by the plaintiffs, George Gravenhorst and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 25th day of April, 1925, upon the report of a referee appointed to hear and determine the whole issues.

At the conclusion of plaintiffs' testimony a motion to dismiss was granted but the referee thereafter made and filed findings of fact and conclusions of law.

*George E. Morgan,* for the appellants.

*Woolsey A. Shepard* [*George A. Ferris* with him on the brief], for the respondents.

JAYCOX, J. The theory of the plaintiffs' cause of action is that the defendants, as brokers, have failed in their duty toward the plaintiffs by whom they were employed, and thus occasioned the plaintiffs damage. The plaintiffs are commission merchants, with offices in the city of New York, and the defendants are duly licensed sugar brokers, with offices and places of business in the city of New York and the city of Philadelphia. On the 19th of May, 1920, plaintiffs received a cablegram from Antwerp offering them 600 tons of granulated sugar for shipment June, July and August at twenty-four and one-fourth cents per pound. The plaintiffs then offered the sugar for sale through a broker named Francis H. Goecker. Goecker met the defendant Joseph B. Turner, Jr., the same day and offered him, on behalf of the plaintiffs, said 600 tons of Belgian granulated sugar for shipment over a period of three months, June, July and August, at a price of twenty-four dollars and eighty cents per 100 pounds, c. i. f., New York. Within the course of an hour he heard from Turner, who told him that the offer was accepted. Goecker then reported to his principals, the plaintiffs. He further says that the above quoted terms are the only terms quoted by him to Turner, and that he did not say " ex-dock." After this lapse of time he is unable to say whether he said anything about an irrevocable letter of credit or not. That such a letter of credit, however, was mentioned is shown by the office memorandum of Turner Brothers, made before any other communication with them, which recites: " Irrevocable letter of credit to be established upon signing of contract."

In an action brought later in Philadelphia, Joseph B. Turner, Jr., testified as to the receipt of the offer of the 600 tons of Belgian granulated sugar; that he communicated that offer to the Phila-

delphia office, and after he heard from the Philadelphia office he reported to the plaintiffs that they had a buyer for the offering which the plaintiffs had made to them, with the name and other details of the transaction, *as the offer was made to them.* Upon receipt of this information one of the plaintiffs communicated with Mr. Turner, Jr., and also went to his office. In that interview Turner stated that he had sold the 600 tons of granulated sugar, 200 tons June shipment, 200 tons July shipment, and 200 tons August shipment, c. i. f., terms letter of credit basis; that he had sold it to the Breyer Ice Cream Company of Philadelphia, and the price was twenty-four and eight-tenths cents per pound. Gravenhorst then returned to his office; looked up the credit of the Breyer Ice Cream Company, to see if it was good for the amount and could open the necessary letter of credit, and prepared a confirmation, which he took to the office of the defendants. This confirmation was signed by the defendants, and a portion of the first sentence of the confirmation reads as follows: " We herewith confirm having to-day sold you through Messrs. Turner Bros., New York, six hundred (600) tons of 2,240 lbs. Belgian Granulated Sugar, packed in bags   *   *   *." Leaving this paper with the defendants to be sent to the Breyer Ice Cream Company, Gravenhorst returned to his office and cabled to Antwerp accepting the 600 tons of sugar. The deal with the Breyer Ice Cream Company fell through. It declined to take the sugar. The plaintiffs then endeavored to secure a release from their contract with the sellers in Antwerp. This was refused. The plaintiffs then went on and sold the sugar. The first shipment they sold at a profit; the second shipment at a loss, and the market was such that the third shipment was not made at all, but the sugar was sold in Antwerp for the account of the plaintiffs and resulted in a loss. There is no controversy as to these transactions, except that the defendants insist that the sugar could have been sold in New York without incurring any loss, and the plaintiffs insist that only sugar for immediate or prompt delivery could be sold at the then market price; that the situation was extraordinary and that sugar for future delivery could not be sold.

After the sugar had been disposed of, as above related, the plaintiffs brought an action against the Breyer Ice Cream Company upon the theory that the Breyer Ice Cream Company had contracted with the plaintiffs to purchase this sugar; that the Breyer Ice Cream Company had defaulted upon its contract and thereby occasioned damage to the plaintiffs, and sought in that action to recover their damages. The Breyer Ice Cream Company answered and denied the contract. The defendants were inter-

viewed in relation to that action and they did not inform the plaintiffs that no contract was made with the Breyer Ice Cream Company, but offered the plaintiffs every aid in their power. Upon the trial of that action the defendant therein proved that no sale to the defendant was made, and the defendants in this action, through their manager, admitted that no sale was made. It is uncontradicted here that during the time the action against the Breyer Ice Cream Company was pending, and before its trial, the plaintiffs, through their attorney, informed these defendants that the only question involved in that action was as to whether Turner Brothers, as brokers, had made the proper entry in their books, so as to take the sale out of the Statute of Frauds,* that having been pleaded as a defense. The defendants informed him that the note would be found in the Philadelphia office. The Philadelphia office furnished the plaintiffs' attorney with an office entry reciting a sale to the Breyer Ice Cream Company. Upon the trial the action was dismissed and the defendants' attorneys claim that the dismissal was under the Statute of Frauds, and the plaintiffs' attorney contends that the dismissal was on the ground that no contract was proven. As the expenses of that litigation are made the subject of the second cause of action which was dismissed by the learned referee, and as it is not in any way involved in the first cause of action, the propriety of the referee's action may be determined without relation to the findings which were subsequently made. The testimony in that action was, so far as quoted in this action, entirely to the effect that no contract was made. This being so, the dismissal, it seems to me, must necessarily have been upon the ground that no contract was made.

As to the first cause of action (the loss upon the sale of the sugar) we have this situation: The plaintiffs employed the defendants as brokers to sell 600 tons of sugar. The defendants reported that they had sold the sugar. This was not true. No sale had been made. The plaintiffs relied on the defendants' representation that they had sold the sugar and completed their purchase from the Antwerp concern which had the sugar for sale. Under these circumstances a cause of action would accrue in favor of the plaintiffs for the loss, if any, which accrued to them by reason of the failure of defendants to truthfully report in relation to the sale. We are, therefore, called upon to decide, did the testimony of the plaintiffs show such a state of facts as to relieve the defendants from this liability. In determining that question the plaintiffs insist that they are entitled to have adopted the construction

---

* Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571.— [REP.

of the testimony most favorable to them, and that they are also entitled to the benefit of all the inferences favorable to them which may be drawn from the testimony. The rule which they state, I think, has no application to a case tried before the court without a jury. The rule they seek to take advantage of is the rule that is laid down when the questions of fact are to be determined by a jury, and at the conclusion of the plaintiff's case the court dismisses the complaint. However, when a case is tried before the court without a jury the court is to determine the questions of fact, and his determination has every presumption in its favor, the same as the verdict of a jury, and this is true whether the decision is made upon the plaintiff's testimony or upon the testimony of both parties. The plaintiffs further urge that upon a nonsuit it was improper to make findings. Both of these propositions were passed upon by this court in *Bascombe* v. *Marshall, No. 1* (129 App. Div. 516) and *Bascombe* v. *Marshall, No. 2* (Id. 518). As to the first of those questions (appeal No. 1) this court stated: " We cannot reverse the court upon the facts unless the proof so clearly preponderated to an adverse conclusion that it could be said with reasonable certainty that the court erred in its conclusions." In appeal No. 2 this court held findings to be proper where at the close of the plaintiff's case the court granted the defendant's motion to dismiss the complaint upon the ground that there was no proof of the cause of action alleged in the complaint, citing *Wood* v. *Lary* (124 N. Y. 83, 87). In the case cited the Court of Appeals said: " When a complaint is dismissed before the introduction of testimony it is a determination that the complaint does not state facts sufficient to constitute a cause of action, and in such case a situation is presented which does not come within the purview of that section. Neither does a case where judgment is rendered on the pleadings. (*Eaton* v. *Wells*, 82 N. Y. 576.) But in any and every case triable before a court without a jury or heard by a referee, if any evidence be presented, a decision stating separately the facts found and the conclusions of law based thereon must be made. If it be not done, the judgment cannot be reviewed. (*Bridger* v. *Weeks*, 30 N. Y. 328.) "

We are, therefore, called upon to determine whether the findings of fact are supported by the evidence, and in doing so the findings must be sustained unless the evidence preponderates against them. Some of the findings of fact, essential to the judgment rendered herein, are contradicted by other findings of fact. The *fifth* finding of fact is to the effect that the defendants were not informed on the 19th day of May, 1920, that the sugars were at Antwerp. The *ninth* finding of fact sets forth a memorandum signed by the

defendants on that day in which it is recited that the sugars are to be shipped from Antwerp. The *seventh* finding of fact is to the effect that on the 19th day of May, 1920, the defendants notified the plaintiffs that they had a buyer for the sugars. The only buyer the defendants ever had any negotiations with was the Breyer Ice Cream Company, and the *twenty-fifth* finding of fact is to the effect that at the trial of the action against the Breyer Ice Cream Company in Philadelphia, the defendants' manager testified that the sugars had not been sold to the Breyer Ice Cream Company. The *eleventh* finding of fact is that the defendants fully performed and discharged all duties owing by them to the plaintiffs in connection with said sugars, and did not make any false statements or representations with reference thereto. It is clear that these findings are contradictory and it is also clear that the *seventh*, *twentieth* and *twenty-fifth* findings of fact are in accordance with the evidence. The *sixteenth* finding of fact is also contradictory to some or all of those last above mentioned. That finding is, in effect, that the defendants disclosed all the facts within their knowledge to the plaintiffs with regard to the negotiations for the sale of said sugars. Accepting the findings most favorable to the plaintiffs and disregarding those which are unsupported by the evidence, or in contradiction to those favorable to the plaintiffs, I think it must be held that the plaintiffs have established a cause of action.

In addition to establishing a cause of action, the plaintiffs endeavored to establish the amount of their damages. The *fourteenth* finding of fact, to the effect that from and after the nineteenth day of May, and throughout the month of June, 1920, the reasonable market price of said sugars was at least twenty-four dollars and eighty cents per 100 pounds, and that from May twenty-sixth to June thirtieth all of said sugars could have been sold in the open market in New York for shipment from Antwerp during the months of June, July and August, at a price equal to or greater than twenty-four dollars and eighty cents per 100 pounds, is contrary to the weight of the evidence. The evidence shows that for some portion of the time mentioned sugar for immediate delivery could have been sold in New York for a price equal to, and in some instances exceeding, twenty-four dollars and eighty cents per 100 pounds. The evidence, however, does not show that those prices could have been obtained for sugars to be shipped during July and August. It is conceded that the sugar shipped in June brought the contract price and no loss is claimed thereon. Some of the quotations of prices represented prices where the seller had paid the duties, and the testimony shows that this made one and three-

quarters cents per pound difference in the price. When this deduction was made the price did not equal twenty-four dollars and eighty cents per 100 pounds. The testimony also shows that the plaintiffs placed the sugar in question in the hands of a number of reputable brokers, entirely competent to obtain the best market prices, and the best prices obtainable by these brokers resulted in a loss to the plaintiffs. The sugars having been sold in that way the prices obtained are some evidence of their market value, and as these prices were, to some extent, corroborated by testimony as to the market prices, and as there was no testimony in contradiction, this finding is contrary to the evidence.

After the defendants reported a sale of the sugar upon the terms proposed by the plaintiffs, the plaintiffs prepared a form of confirmation or contract to be signed by the purchaser. This form is set forth in finding number nine and recites a sale through the defendants, as brokers, and is signed by them. The *tenth* finding of fact is to the effect that this proposed contract contained terms wholly different from the terms communicated by the defendants to the Breyer Ice Cream Company as the terms upon which the sale was to be consummated, and it is found as a conclusion of law that the proposal of this contract constituted a withdrawal of the terms theretofore submitted and a refusal on the part of the plaintiffs to carry out the same, and that such withdrawal and refusal canceled and rendered void all previous acts. It was testified upon the trial, without contradiction, that there was a standard form of c. i. f. letter of credit contract; that the contract printed in finding nine was such standard form, and that such a form was well recognized in the trade.

In Corpus Juris (Vol. 13, p. 271) it is said: " Every trade, business, or calling has its usages, and persons who make offers relating thereto assume that all the customary incidents of such callings shall be part of the agreement and hence do not expressly refer to them. Although unexpressed, they are implied terms of the contract; and this is true in the case both of written and of oral contracts."

This rule of law applied to and governed the contract proposed in this case, and until contradicted the testimony as to such custom and usage must be accepted, and the court had no right to set up its own view in opposition to the testimony so given.

The *fourth* finding of fact is to the effect that the terms proposed by the plaintiffs included the provision " ex-dock." Mr. Goecker, who communicated the plaintiffs' offer to the defendants, testified positively that that provision was not in the proposition as communicated by him to the defendants.

If the defendants had actually made a sale, as they represented, and had made the proper entry in their books in relation thereto, this would have constituted a contract between the plaintiffs and the Breyer Ice Cream Company. " A binding contract between the parties employing a broker is constituted by a signed entry in his books of a sale of the goods from the one to the other." (Wood Stat. Frauds, § 430.) This is supported by the authorities generally. (*Butler* v. *Thomson,* 92 U. S. 412; *Newberry* v. *Wall,* 84 N. Y. 576; *Childs* v. *Riley Co.,* 186 App. Div. 775; 20 Cyc. 256, § G; Benjamin Sales [4th Am. ed.] § 273.) The agent is liable to his principal for all damage caused by his negligence, lack of diligence, omission to perform the proper functions of his agency or a misstatement or the suppression of a fact connected with his agency. (Story Agency [9th ed.], § 217 *c.*) It was not necessary to prove fraud. (*Heinemann* v. *Heard,* 50 N. Y. 27, 35.)

The findings of fact above mentioned should be reversed; the conclusions of law annulled; the judgment reversed upon the law and the facts, and a new trial (as to both causes of action) granted; costs to abide the event.

KELLY, P. J., RICH, MANNING and YOUNG, JJ., concur.

Judgment reversed upon the law and the facts, and a new trial granted as to both causes of action, costs to abide the event. The 4th, 5th, 7th, 9th, 10th, 11th, 16th, 20th and 25th findings of fact are reversed, and conclusions of law annulled, in accordance with opinion. Settle order on notice.