Michael Giresi, petitioner-appellant,

*v.*

Rose Giresi, defendant-respondent.

[Submitted October 17th, 1944. Re-argued May term, 1945—Decided October 15th, 1945.]

*Mr. Hyman Halpern* (*Mr. Arthur J. Connelly,* of counsel), for the appellant.

*Mr. Ernest F. Masini* and *Messrs. Bilder, Bilder & Kaufman* (*Mr. Bernard Hellring,* of counsel), for the respondent.

The opinion of the court was delivered by

COLIE, J.

This cause was submitted on briefs at the October term, 1944. It was apparent that an important principle was involved and that the record was deficient in essential respects. Rather than dismiss the appeal because of the inadequacy of the record, the court requested counsel to amplify it and to argue the questions involved. This was done at the May term, 1945.

The facts follow in chronological order. Michael Giresi and Rose Giresi were married in 1908. They lived together until 1938 when discord arose which need not be detailed except to say that in 1939 an order was entered directing Michael Giresi to pay $7 per week for the support and maintenance of his wife. In 1941 Michael filed a petition in the Court of Chancery alleging that he and his wife were then and had been for two years last past *bona fide* residents of New Jersey and prayed the court for a divorce upon the ground of desertion. The wife's answer denied the desertion and counter-claimed for suitable support and maintenance. After issued joined, the cause came to final hearing and on December 23d, 1942, the Chancellor entered a decree dismissing the husband's petition for divorce and directing him to pay annually $624 in equal weekly installments as support and maintenance. In May, 1943, the husband was adjudged in contempt for failure to abide by the aforesaid decree. An

order and warrant issued for his arrest but was returned "not served" because he could not be found. On June 15th, 1943, in the Second Judicial District Court of Nevada for the County of Washoe, Michael Giresi filed a suit against his wife, Rose, praying for a dissolution of the bonds of matrimony upon the ground "that the plaintiff and defendant have lived apart for three consecutive years, without cohabitation." We interpolate that the reason stated is not a valid ground for divorce in New Jersey. The complaint in the Nevada suit alleged that Michael Giresi was "and for more than six weeks immediately preceding the commencement of this action has been, an actual *bona fide* resident * * * of Nevada, * * * and took up his residence and home with an intention to remain permanently, * * * is now domiciled in * * * Nevada, with an intention to make his permanent home in said County (Washoe) for an indefinite period of time." The record discloses that an answer was filed by two Nevada attorneys, one of whom executed an affidavit attached to the answer which recites that his client Rose Tabon Giresi "is absent from * * * Washoe County * * *; that the facts * * * are not within his personal knowledge; but that deponent is informed and verily believes * * * that the facts and matters * * * set forth and alleged in said Answer are true." The answer sets up four separate defenses; *first*, a denial that the court has jurisdiction; *second*, that plaintiff "is attempting to perpetrate a fraud upon this Court in that this plaintiff has falsely alleged that he had actually domiciled in the State of Nevada, whereas in truth and fact, said plaintiff has no intention whatsoever of remaining in Nevada or of regarding the State of Nevada as his home, but has merely gone to the State of Nevada as a temporary measure and solely for the purpose of obtaining a decree of divorce;" *third*, that the matters set forth in the complaint are *res judicata* by reason of the decree of the Court of Chancery, dated December 23d, 1942, and that said Court of Chancery has jurisdiction of both persons and subject-matter and therefore its decree is entitled to full faith and credit in the courts of all states by virtue of the federal constitution; *fourth*, that by virtue of his conduct in abandoning his marital

obligations and evading service of process of the Court of Chancery he is estopped from seeking relief in a court of conscience. While the filing date of this answer is not disclosed, it was sworn to on August 9th, 1943. Two weeks later, August 23d, an amended answer was sworn to. The amended answer omitted the four separate defenses summarized above, but merely contained a denial of the allegations of a Nevada residence and of the intention to make his permanent home in that state. On September 21st the wife filed a petition in the Court of Chancery to enjoin and restrain her husband from prosecuting the Nevada action and on the same date an order to show cause issued thereon. The record discloses that it was not served until after the entry of the decree of the Nevada court and therefore requires no further mention. It also appears from an affidavit of Michael Giresi filed in February. 1944, that the Nevada court allowed "expense money to defend the suit and I paid her the sum allowed." No such order appears in the record presented to us but assuming it to be true, it does not affect our disposition of this appeal. On October 6th, 1943, the Nevada court entered its decree granting to Michael Giresi a divorce. On November 3d, 1943, an *alias* warrant issued out of the Court of Chancery and obviously was served, for the record shows that two days later Michael Giresi paid, in cash, the full amount due on the warrant of commitment. In January, 1944, Rose Giresi filed a petition praying that Michael be adjudged in contempt of court for failure to abide by the decree of December 23d, 1942. By way of answer, he filed an affidavit, annexing a copy of the Nevada decree, and asserted that he thereby was excused from conforming to the decree of the Court of Chancery. On July 11th, 1944, the Chancellor entered an order adjudging him guilty of contempt of court in willfully violating the decree for payment of separate maintenance. The present appeal is from the last mentioned order.

The public policy of this state toward divorces obtained in another state was settled by the legislature in *section 33, chapter 216, Laws of 1907,* carried into the *Revision of 1937* as *R. S. 2:50–35:*

"Full faith and credit shall be given in all courts of this state to a decree of annulment of marriage or divorce by a court of competent jurisdiction in another state of the United States when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections 2:50–9, 2:50–10 and 2:50–11 of this title. Nothing herein contained shall be construed to limit the power of any court to give such effect to a decree of annulment or divorce by a court of a foreign country as may be justified by the rules of international comity; provided, that *if any inhabitant of this state shall go into another state or country, in order to obtain a decree of divorce* for a cause which occurred while the parties resided in this state, or *for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force* or effect in this state." (Italics supplied.)

In the instant case, the ground upon which the Nevada court awarded a divorce is not a valid ground for divorce under the laws of New Jersey. Therefore, this situation comes squarely within the terms of the proviso quoted above. However, the declared policy of New Jersey must give way to the provision of the federal constitution that "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings in every other state," if the decree of the sister state is entitled to full faith and credit. A decree or judgment of a court having no jurisdiction to act is void. Did the Nevada court under the circumstances here shown have jurisdiction to grant a valid divorce? A prerequisite to jurisdiction in the Nevada court is a determination that Michael Giresi was, as he alleged in the complaint, "an actual *bona fide* resident * * * of Nevada." It will be recalled that the original answer denied that he was a *bona fide* resident of Nevada and affirmatively alleged his purported residence to be a fraud. When the fraud allegation was dropped out of the case by the filing of an amended answer, the denial of the Nevada residence was still in issue and the presumption arises that the Nevada court passed upon the question, otherwise it would not have rendered judgment. The presumption is rebuttable and not conclusive. *Hollingshead* v. *Hollingshead, 91 N. J. Eq. 261.* At least as early as *Fairchild* v. *Fairchild, 53 N. J. Eq. 678,* this court held that one of the grounds upon which the judgment of a court of general jurisdiction of another state may be disregarded

is where its adjudication has been obtained by fraud. The stated holding in *Fairchild* v. *Fairchild, supra,* has been asserted in this court as recently as *Hollander* v. *Hollander, 137 N. J. Eq. 70,* and *Cox* v. *Cox, 137 N. J. Eq. 241.* Nor do we find that these holdings have been impaired by *Esenwein* v. *Esenwein, 322 U. S. 725; 88 L. Ed. 1562,* or *Williams* v. *North Carolina* (two cases), *317 U. S. 287; 87 L. Ed. 279,* and *U. S.* ; *89 L. Ed. 1123.* In the second *Williams Case* the court said: "The decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicile is a jurisdictional fact."

There yet remains for consideration the fact that the defendant, by Nevada attorneys, appeared generally by filing an answer and also accepted the "suit money" awarded her by the Nevada court. While it is too well settled to need citation of authority that one may not ordinarily challenge the jurisdiction of a court after the entry of a general appearance therein, nevertheless we are of the opinion that in those cases dealing with the effect of a divorce decree in another state than that in which it was obtained, an important distinction has often been overlooked. In *Feickert* v. *Feickert, 98 N. J. Eq. 444,* that distinction was pointed out in the following language: "In ordinary cases the parties being *sui juris* must protect themselves and defend their own interests. * * * But divorce cases being *sui generis* the public is a party to them, *whose rights are represented and protected by the court.* * * * it is the policy of the law, * * * that all proper defenses be made or compelled." (Italics added.)

Justice requires that full inquiry be made into the facts and circumstances of appellant's allegedly *bona fide* Nevada residence and his activities prior to, during and after the pendency of that suit; also as to the facts and circumstances in connection with the retention of attorneys in the Nevada action and their actions therein and any other matters which are pertinent to the determination by the Court of Chancery of the question whether the Nevada residence was *bona fide* and whether there was a fraud perpetrated upon the Nevada court.

342

The cause is remanded to the Court of Chancery to proceed in a manner consistent with the views herein expressed.

*For affirmance*—CASE, DONGES, DILL, JJ.   3.

*For reversal*—THE CHIEF-JUSTICE.   1.

*For modification*—PARKER, BODINE, HEHER, PERSKIE, COLIE, WELLS, RAFFERTY, FREUND, JJ.   8.