## SHERMAN v. FEDERAL SECURITY AGENCY, SOCIAL SECURITY BOARD.

### No. C–5454.

District Court, D. New Jersey.

Jan. 30, 1947.

Sidney Alpern, of Long Branch, N. J., for plaintiff.

Edgar H. Rossbach, of Newark, N. J., U. S. Atty., and Edward V. Ryan, of Jersey City, N. J., Asst. U. S. Atty., for defendant.

FORMAN, District Judge.

Louis Teitelbaum and Belle Samisch were legally married on September 24, 1929 and continued to reside in New York until they separated. On July 28, 1934 a Mexican decree of divorce was issued to plaintiff in this case, and on September 1, 1934 Teitelbaum was served with an English translation. Neither Teitelbaum nor plaintiff was a resident of Mexico, nor did either of them go to Mexico for the purpose of the action.

Plaintiff married Berthold A. Sherman, the deceased wage earner on August 19, 1935 in the State of Connecticut, while both parties were residents of New York State. They moved to New Jersey in 1937 and resided in this district until the death of Sherman on April 23, 1944. At his death there were three children of the marriage between him and plaintiff.

On May 22, 1944 plaintiff filed with the Bureau of Old Age Survivors Insurance of the Social Security Board an application under the provisions of Title II of the Social Security Act, as amended, 42 U.S.C.A. § 401 et seq., for "widow's [cur- rent] insurance benefits" on her own be- half, and for "child's insurance benefits" on behalf of her children. On July 10, 1944, the Bureau allowed child's insurance ben- efits on behalf of the children, but held that plaintiff was not entitled to a widow's current insurance benefit. She thereupon requested reconsideration by the Bureau and on August 8, 1944 the Bureau affirmed its initial determination. Thereafter, at the request of plaintiff, hearings were held before a referee of the Board, resulting in a decision on February 12, 1945 which affirmed the holding of the Bureau. There- after, plaintiff requested and received a review by the Appeals Council of the Social Security Board which on April 24, 1945 affirmed the decision of the referee. Plaintiff then, pursuant to statute, com- menced the above entitled cause, but prior to the filing of the Board's answer and pur- suant to 42 U.S.C.A. § 405(g), on August 6, 1945, a consent order was entered re- manding the claim and the case to the Social Security Board for further proceed- ings. Additional evidence was taken in- cluding the testimony of Teitelbaum and on January 18, 1946 the Appeals Council issued a supplemental decision. Thereafter answer was filed on behalf of defendant denying the right of the plaintiff to recover, and it moved for summary judgment, the proceedings now before the court.

Applicable federal statutes are as fol- lows: "Every widow * * * of an in- dividual who died a fully or currently in- sured individual after December 31, 1939 * * * shall be entitled to receive a widow's current insurance benefit * * *". 42 U.S.C.A. § 402(e) (1).

"The term 'widow' * * * means the surviving wife of an individual who either (1) is the mother of such individual's son or daughter, or (2) was married to him prior to the beginning of the twelfth month before the month in which he died." 42 U.S.C.A. § 409(j).

"In determining whether an applicant is the wife, widow, child, or parent of a fully insured or currently insured indi- vidual for purposes of sections 401-409 of this title, the Board shall apply such law as would be applied in determining the

devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a wife, widow, child, or parent shall be deemed such." 42 U.S.C.A. § 409(m).

The pertinent New Jersey statute provides: "Full faith and credit shall be given in all courts of this state to a decree of annulment of marriage or divorce by a court of competent jurisdiction in another state of the United States when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections 2:50-9, 2:50-10 and 2:50-11 of this title. Nothing herein contained shall be construed to limit the power of any court to give such effect to a decree of annulment or divorce by a court of a foreign country as may be justified by the rules of international comity; provided, that if any inhabitant of this state shall go into another state or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force or effect in this state." N.J.S.A. 2:50—35.

From the facts disclosed herein it appears that plaintiff and her husband resided in New York State at the time of the Mexican divorce, and that she did not become a resident of New Jersey until after her second marriage. The case of Lister v. Lister is applicable to these facts but only by dictum. The court therein thought a foreign decree of divorce could be set aside in this state even though neither of the parties was a resident of New Jersey: "It is, I think, the established law of this state that jurisdiction of a court to grant a divorce from the bond of matrimony cannot rest in the slightest degree upon the consent of either of the parties to the marriage, or of both of them. Any divorce granted by a court in a foreign state in which neither of the parties was a bona fide resident would, I think, be treated as void by the courts of New Jersey, even although neither of the parties was at any time a resident of this state. Of course, it is not necessary to lay down such an extreme proposition in this case, because the complainant was domiciled in New Jersey, the matrimonial domicile was here, and the defendant's pretended change of domicile and residence was a fraud and a sham." 1915, 86 N.J.Eq. 30, 35, 97 A. 170; 172.

The government cites Giresi v. Giresi, 1945, 137 N.J.Eq. 336, 44 A.2d 345; Reik v. Reik, 1932, 109 N.J.Eq. 615, 158 A. 519; Hollingshead v. Hollingshead, 1920, 91 N.J.Eq. 261, 110 A. 19; Greenspan v. Greenspan, 1941, 18 A.2d 383, 19 N.J.Misc. 153, for the proposition that a Mexican decree of divorce is ineffective in New Jersey. However, in each of those cases the parties resided in this state at the time of the decree of divorce elsewhere.

 It does not appear that the dictum quoted supra has become the law in the state court, for the rule is that in the absence of residence within the state at the time of the foreign divorce the courts of New Jersey are without jurisdiction to nullify the decree. N.J.S.A. 2:50–35, supra; Greensaft v. Greensaft, 1936, 120 N.J.Eq. 208, 184 A. 529; Floyd v. Floyd, 1924, 95 N.J.Eq. 661, 124 A. 525; In re West, 1924, 2 N.J.Misc. 526.

In the last of the above-cited cases Grace West claimed to be the widow of Charles West and applied for letters of administration. The heirs of Charles objected claiming she was not the wife of Charles. It was shown that she was previously married and resided in the State of New York from which she went to Reno and procured a divorce. The court stated that the divorce was a fraud on the State of Nevada, but concluded it was unable to question its validity in this state.

The rule as we see it is equally applicable whether the point is raised by direct or collateral proceeding. Compare In re West, supra, with Floyd v. Floyd, supra.

The government has cited the attitude of New York, Connecticut, Ohio and Pennsylvania courts in order to prove the invalidity of Mexican divorces. It refers to Petition of Taffel, D.C.1941, 49 F.Supp. 109, which involved a petition for naturalization filed in the Southern District of New York on behalf of a wife whose "husband", an American citizen, had previously divorced his first wife by a Mexican proceeding obtained while the parties continued to reside in New York. Petitioner and her "husband" were afterwards married in New Jersey. The court held that the divorce was null and void according to the laws of New York, and that if the parties were residents of New Jersey at the time the Mexican divorce decree was procured, it would still be null and void. Our own conclusion with regard to the law of New Jersey is not inconsistent with this decision.

We have no occasion to deal with the laws of other states, because the federal statute involved herein and quoted supra provides that the law of New Jersey controls, the place where the "insured individual is [was] domiciled". .

The motion for summary judgment is denied and the decision of the Board is reversed. 42 U.S.C.A. § 405(g).