**SHERMAN v. FEDERAL SECURITY AGENCY, SOCIAL SECURITY BOARD.**

No. 9423.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 4, 1947.

Decided Feb. 26, 1948.

Rehearing Denied March 31, 1948.

Hubert H. Margolies, of Washington, D. C. (Peyton Ford, Asst. Atty. Gen., Edgar H. Rossbach, U. S. Atty., and Edward V. Ryan, Asst. U. S. Atty., both of Newark, N. J., and Edward H. Hickey, Sp. Asst. to the Atty. Gen., on the brief), for appellant.

Sidney Alpern, of Long Branch, N. J., for appellee.

Before BIGGS, MARIS and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

This case involves the right of the plaintiff, Belle Sherman, to a widow's current insurance benefit under Section 202(e) (1)[1] of the Social Security Act which she claims as the widow of Berthold A. Sherman, a deceased insured wage earner. The facts as found by the Social Security Board are as follows:

On September 24, 1929 the plaintiff, then Belle Samisch, and one Louis Teitelbaum were legally married by ceremony in Brooklyn, New York. At that time they were both residents of New York and were competent to contract the marriage. The plaintiff separated from Teitelbaum in May, 1930, and in 1934 she instituted divorce proceedings against him in the Court of First Instance of the First Judicial District of the State of Morelos at Cuernavaca, Mexico. On July 28, 1934 the Mexican court issued to the plaintiff a final decree of divorce from Teitelbaum on the grounds of cruelty and incompatability of temperament. Neither party to the Mexican divorce had ever set foot in that country at any time prior to the institution of the divorce proceedings nor has either been in Mexico at any subsequent time. Both of them were permanent residents of the State of New York from the time of their marriage until September, 1937. Teitelbaum remained a resident of New York until about May, 1942 and on January 7, 1946, when his deposition was taken by the Board, he was a resident of the District of Columbia. On August 19, 1935 the plaintiff and Berthold A. Sherman entered into a purported marriage at Greenwich, Connecticut, the ceremony being performed by a Justice of the Peace. Following this purported marriage the plaintiff and Sherman continued to reside in the State of New York until September, 1937 when they moved to New Jersey, where they resided until Sherman's death on April 23, 1944.

Following Sherman's death the plaintiff made claim as his widow for widow's current insurance benefits under Section 202 (e) (1) of the Social Security Act. Her claim was denied by a referee of the Social Security Board and, on review, by the Appeals Council of the Board. The referee and Appeals Council held that the plaintiff's Mexican divorce was absolutely void, that her subsequent marriage to the wage earner Sherman was, therefore, void ab initio, and that since she was not in law the wife of Sherman at the time of his death she was not entitled as his widow to claim a widow's current insurance benefit under Section 202(e) (1) of the Act.

The plaintiff, being aggrieved by the Board's decision filed her complaint in the district court for the district of New Jersey under Section 205(g) of the Act.[2] Upon a motion for a summary judgment the district court reversed the decision of the Social Security Board and ordered the Federal Security Administrator[3] to certify the plaintiff's name as entitled to widow's current insurance payments. 70 F.Supp. 758. The present appeal by the Federal Security Agency followed. In this court the appellant urges that the district court erred in holding that the plaintiff must be regarded as Sherman's widow within the meaning of the Social Security Act.

Section 209(j) of the Social Security Act provides: "The term 'widow' * * * means the surviving wife of an individual who either (1) is the mother of such individual's son or daughter, or (2) was married to him prior to the beginning of the twelfth month before the month in which he died."[4]

---

[1] 42 U.S.C.A. § 402(e) (1).

[2] 42 U.S.C.A. § 405(g).

[3] By Section 4 of Reorganization Plan No. 2 of 1946, the Social Security Board was abolished and its functions were transferred to the Federal Security Administrator. 60 Stat. 1095, 5 U.S.C.A. following section 133y—16.

[4] 42 U.S.C.A. § 409(j).

The Act further provides, in Section 209 (m): "In determining whether an applicant is the * * * widow, * * * of a fully insured or currently insured individual for purposes of this title, the board shall apply such law as would be applied in determining the devolution of intestate personal property * * *, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a * * * widow, * * * shall be deemed such."[5]

It will be seen from the subsection of the Social Security Act last quoted that the Board was required to determine the question whether the plaintiff was the widow of the wage earner, Sherman, by referring to the law of New Jersey which would be applicable to the devolution of Sherman's intestate personal property. In other words, the correctness of the Board's decision must turn upon whether under the law of New Jersey the plaintiff would be recognized as the widow of Sherman for the purpose of taking as his widow personal property from his estate.

█ Turning to the consideration of this question we begin with the proposition, laid down in New Jersey as recently as June 19, 1947, that the Orphans Court, which in that state is the court empowered to determine the devolution of intestate personal property, will consider and determine the validity of a divorce decree obtained in another state when it is necessary for it to do so in order to pass upon the rights of a person making claim as widow to property of a decedent. Vaughan v. Vaughan, Monmouth Co. O.C., 1947, 53 A 2d 625, 25 N.J.Misc. 340.

In the case just cited the Orphans Court was called upon to determine which of two persons claiming to be a decedent's widow was entitled to an assignment of dower in his lands. The question turned upon whether a Florida divorce decree obtained by the decedent against one of the claimants was valid. In deciding that the court had the right to consider this question Judge Giordano said at page 627 of 53 A.2d at page 343 of 25 N.J.Misc.:

"The petitioners must show that they are entitled to dower and every element in the proof therefor becomes a necessary element of the cause, and the cause is one which has been expressly given to the Orphans' Court.

"The decision in this case necessarily depends on whether full faith and credit should be given to the alleged Florida decree and that question can not be answered until inquiry is made to learn whether that decree was void or valid. The validity of the alleged Florida decree is therefore a question which must necessarily be decided in reaching a conclusion on a matter entrusted to this Court, and there is ample authority that the court may determine questions of law and equity, the decision of which is necessary to the decision of some other matter expressly committed to it, * * *."

█ It is perfectly clear that the courts of New Jersey, when the question is presented to them for decision, will treat as absolutely void a divorce granted by a court in a foreign state in which neither of the parties was a bona fide resident. Lister v. Lister, Ch. 1915, 86 N.J.Eq. 30, 97 A. 170; Hollingshead v. Hollingshead, Ch. 1920, 91 N.J.Eq. 261, 110 A. 19; Reik v. Reik, Ch. 1932, 109 N.J.Eq. 615, 158 A. 519, affirmed 112 N.J.Eq. 234, 163 A. 907; Knapp v. Knapp, Ch. 1934, 173 A. 343, 12 N.J.Misc. 599; Newton v. Newton, Ch. 1935, 179 A. 621, 13 N.J.Misc. 613; Greenspan v. Greenspan, Ch. 1941, 18 A.2d 283, 19 N.J.Misc. 153; Giresi v. Giresi, Err. & App. 1945, 137 N.J.Eq. 336, 44 A.2d 345. In so holding the New Jersey Courts are in accord with the settled rule in this country that jurisdiction in divorce is founded solely on domicile. Bell v. Bell, 1901, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Andrews v. Andrews, 1903, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366; Williams v. North Carolina, 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366.

█ Applying this rule, the New Jersey courts have uniformly held that divorce decrees rendered by the courts of the State

---

[5] 42 U.S.C.A. § 409(m).

of Morelos, Mexico, where neither party had or even pretended to have a residence are absolutely void. Knapp v. Knapp, Ch. 1934, 173 A. 343, 12 N.J.Misc. 599; Greenspan v. Greenspan, Ch. 1941, 18 A.2d 283, 19 N.J.Misc. 153. Likewise New Jersey adheres to the universal rule that the act of going through a ceremonial marriage does not create the marriage relation if one of the parties has an impediment such as an existing marriage with a third person. Dumont v. Dumont, N.J.Ch. 1900, 45 A. 107; Newton v. Newton, Ch. 1935, 179 A. 621, 13 N.J.Misc. 613.

The application of these principles to the facts of the present case would seem to require the conclusion that the courts of New Jersey would hold that the plaintiff would not be entitled to share as Sherman's widow in the distribution of his personal property under the intestate laws and that the decision of the Social Security Board denying her insurance benefits as his widow was, therefore right. Certainly it is beyond dispute that the divorce which the plaintiff secured from the Mexican court was entered without any semblance of jurisdiction and was, therefore, utterly void. Consequently the plaintiff's subsequent marriage to Sherman was bigamous and, therefore, void, and at the death of Sherman the plaintiff was the wife of Teitelbaum and, therefore, could not have been Sherman's widow.

Nonetheless the district court held and the plaintiff on appeal here asserts that a contrary conclusion is compelled by three New Jersey cases. The cases referred to are In re West's Estate, Essex Co. O.C., 1924, 2 N.J.Misc. 526; Floyd v. Floyd, Err. & App. 1924, 95 N.J.Eq. 661, 124 A. 525 and Greensaft v. Greensaft, Err. & App. 1936, 120 N.J.Eq. 208, 184 A. 529. The district court, relying upon these cases, took the position that the New Jersey courts, and hence the Board, were not empowered to question the validity of the plaintiff's Mexican divorce because the parties were not residents of New Jersey when it was obtained. We accordingly turn to the consideration of these cases in order to ascertain whether they do support the court's conclusion in this regard.

At the outset it must be conceded that In re West, 2 N.J.Misc. 526, supports the position taken by the district court. That case, which was decided by the Essex County Orphans Court, involved an appeal by the next of kin of the decedent, Charles A. West, from an order of the surrogate of Essex County granting letters of administration to one Grace F. West who claimed to be the decedent's widow. It appeared that Grace, who had been ceremonially married to West in New York on April 27, 1920, had previously been married to one Marquette in New York in 1914, that she had continued to live in New York until 1919 when she went to Reno, Nevada, where on March 5, 1920 she secured a decree of divorce from Marquette.

The next of kin in the West case contended that the divorce decree obtained by Grace in Nevada was invalid, that consequently her marriage to West was invalid, and hence that she was not entitled to letters of administration as his widow. The Orphans Court, in an opinion filed by an advisory master from which no appeal appears to have been taken, held that although it would have no difficulty in finding that the Nevada decree was invalid because of the fictitious nature of Grace's residence in that state, nonetheless the court should not pass upon the validity of the Nevada divorce because of the fact that neither Grace nor her then husband, Marquette, were residents of New Jersey at the time of the granting of the divorce nor at any time prior thereto.

The decision of the Orphans Court in the West case was grounded upon the decision of the Court of Chancery in Nichols v. Nichols, Ch. 1874, 25 N.J.Eq. 60. That was a divorce case in which the respondent set up as a defense a decree of divorce which he had previously obtained from the complainant in Indiana. The complainant in the New Jersey suit asserted that the Indiana decree of divorce had been fraudulently obtained and that the Indiana court was without jurisdiction to grant it. The Court of Chancery held that since the complainant in the New Jersey suit had appeared by counsel in the Indiana action she was a party to the fraud on the Indiana

court and, therefore, could not take advantage of it by asserting the invalidity of the decree which resulted. The court also found that she was guilty of laches. As a third ground of decision Chancellor Runyon said 25 N.J.Eq. at page 65: "There is still another consideration. I am satisfied from the evidence that the parties to this suit were not residents of this state when the suit in Indiana was commenced, nor at any time during its progress, nor at the time when the decree was made. No fraud on the law of this state, therefore, was committed by those proceedings or that decree."

It is this cryptic statement made by Chancellor Runyon in 1874 which the Orphans Court took hold of as a basis for its decision in the West case and upon which the district court relied in the present case. It is quite clear, however, that whatever may be the case when a foreign divorce decree is sought to be subjected to direct attack, the proposition which the Chancellor thus suggested in 1874 no longer bars inquiry into the validity of a foreign divorce decree in a case where the validity of the decree is collaterally involved in the determination of another question properly before the court. This must be concluded from the fact that in two recent cases in the Court of Chancery, Fried v. Fried, Ch. 1926, 99 N.J.Eq. 106, 132 A. 674, and Shapiro v. Shapiro, Ch. 1935, 180 A. 434, 13 N.J.Misc. 788, in each of which a foreign divorce decree was set up in a defense and its validity was attacked by the complainant, the court passed upon the validity of the foreign decree even though it appeared that at the time it was obtained both parties were nonresidents of New Jersey. The Fried case was a bill by a wife for maintenance for herself and her children and the Shapiro case was a petition for a divorce. The two cases are indistinguishable on the relevant facts from the Nichols case but in each of them the Court of Chancery held that it was competent to pass upon the validity of the foreign decrees and did in fact determine those decrees to be invalid. In the Fried case Vice-Chancellor Buchanan said at page 109 of 99 N.J.Eq., at page 675 of 132 A.:

"That this court has jurisdiction of the proceeding, as a suit for maintenance, is not challenged, nor could it be successfully. It has jurisdiction over the persons, as has been noted; assuredly it has also jurisdiction over the subject-matter, for the bill alleges (and concededly, if defendant and complainant are still husband and wife, there has actually been) an abandonment and refusal to support, as specified by the statute. Moreover, if this, indeed, be requisite, the abandonment and refusal to support were acts committed by the husband in this state, being acts continuing during the period of his actual residence here. * * *

"Having thus jurisdiction of the main cause, this court has also jurisdiction of the secondary question as to the validity of the Illinois decree interposed as a defense."

In the Shapiro case the court, following its previous decision in the Fried Case, added at page 436 of 180 A., at page 792 of 13 N.J.Misc.: "To hold that the courts of this state have not, in a wife's suit for divorce the right to inquire into the validity of a decree for divorce held by a husband where such a decree is sought to be interposed by the husband as a defense and where the decree held by the husband has been obtained in a state in which the parties have never had a matrimonial domicile, and where there had been no personal service within the state, or appearance by attorney or otherwise, would be so manifestly unjust that such a proposition is inconceivable. Such a holding would encourage those who obtain fraudulent foreign decrees to seek this state as a haven of reffuge."

It will thus be seen that the Court of Chancery has definitely rejected as inapplicable to facts essentially analogous to those in the Nichols case the proposition, above quoted, which Chancellor Runyon stated in his opinion in that case as an alternative ground of decision. So far as regards the application of that proposition, the facts in the West case and in the case now before us are indistinguishable in principle from those of the Fried and Shapiro cases. For in each case the court had before it for decision a controversy clearly within its

jurisdiction but which depended for its solution upon the validity of a foreign divorce decree upon which one of the parties relied in support of his position. The only conclusion which can be drawn is, as has been suggested, that the proposition stated in the Nichols case upon which the West case was decided may not now be regarded as applicable to a case where the validity of a divorce decree is incidentally involved in the determination of another question properly before the court for decision.

■ In fact the Fried and Shapiro cases make it clear that the New Jersey courts have in this matter returned to the rule stated by the Supreme Court of the United States as long ago as 1828 in Elliott v. Peirsol, 1 Pet. 328, 340, 26 U.S. 328, 340, 7 L.Ed. 164, and described by that court in 1849 in Peck v. Jenness, 7 How. 612, 624, 48 U.S. 612, 624, 12 L.Ed. 841, as "too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, * * *". Indeed the right to have one's defense heard and considered is basic in that due process of law which the Fourteenth Amendment requires New Jersey to accord to its litigants. Compare Yakus v. United States, 1944, 321 U.S. 414, 433, 64 S.Ct. 660, 88 L.Ed. 834. It necessarily follows, we think, that the West case was wrongly decided, that it is, as the appellant describes it, a "judicial sport" which stands alone and which does not evidence the law of New Jersey.

We do not mean to intimate that we think that the proposition laid down by Chancellor Runyon in the Nichols case has lost all vitality. On the contrary it appears still to be applicable in what may be regarded as its proper sphere, namely, in those cases brought for the purpose of making a direct attack upon a foreign divorce decree. Examples of its application in this situation are found in Floyd v. Floyd, Err. & App. 1924, 95 N.J.Eq. 661, 124 A. 525, and Greensaft v. Greensaft, Err. & App. 1936, 120 N.J.Eq. 208, 184 A. 529. Since both these cases involved a direct attack upon a foreign divorce decree they are distinguishable on that ground from the

West case and the case now before us in each of which the validity of the foreign decree was only incidently involved. Since, however, in the West case the Orphans Court placed some reliance upon the Floyd case and the district court in the present case relied upon both cases, we pause to consider them at this point. The Greensaft case followed and relied upon the Floyd case and is in principle indistinguishable from it. We need, therefore, only discuss the Floyd case.

In the Floyd case the bill was filed for the purpose of obtaining a decree declaring null and void a Nevada divorce decree which had previously been obtained by the defendant. It appeared that the complainant was not domiciled in the State of New Jersey and that neither party was a resident of New Jersey when the foreign divorce in controversy was sought and granted. The Court of Errors and Appeals held that the Court of Chancery did not have jurisdiction to entertain such a direct attack upon a foreign decree of divorce at the behest of a nonresident of the state. To entertain a suit of that character, said the court at page 665 of 95 N.J.Eq., at page 527 of 124 A., "would have a pernicious tendency to convert this state into a mecca for disgruntled divorcees."

The court pointed out that although the bill was directed solely to review the validity of the Nevada decree in order to determine the parties' matrimonial status, that status was not a matter of concern to New Jersey since the matrimonial domicile was in Pennsylvania, saying at page 665 of 95 N.J.Eq., at page 527 of 124 A.: "Although the present suit does not seek a dissolution or an annulment of the marriage contract, nevertheless, it is quite manifest whatever result the court below reached it would affect the marital relation which never was here, but existed in the state of Pennsylvania at the time the defendant obtained her decree, and where the complainant still resides."

The court stated, however at page 665 of 95 N.J.Eq., at page 527 of 124 A.: "There can be no debatable question concerning the right of a suitor to come into this state and attempt to enforce a judgment obtained in a foreign state, and, likewise,

the right of a defendant to challenge the validity of such judgment upon the ground of fraud or lack of jurisdiction of the foreign tribunal which rendered the judgment."

It will thus be seen that the Floyd and Greensaft cases merely decide, upon an application of the doctrine of forum non conveniens, that the New Jersey courts will not entertain a direct attack upon a foreign divorce decree where the state, not being the domicile of the parties, has no real interest in their marital status. So considered, the cases furnish no authority for the decision of the Orphans Court in the West case or of the district court in the present case. For neither the West case nor the case now before us involved such a direct attack upon a foreign divorce decree. On the contrary, as we have seen, in each case the jurisdiction of the court was properly invoked to decide a controversy which was within its competence and the validity of the foreign divorce decree was presented to the court as an issue incidental and subsidiary to the question which the court had to decide, in the West case whether Grace West was entitled to letters of administration, and in the present case whether the plaintiff is entitled to widow's benefits.

It follows from what has been said that the decision of the Orphans Court in the West case cannot be regarded as stating the law of New Jersey and, therefore, as compelling the reversal of the decision of the Social Security Board in this case. Nor is such reversal compelled by the Floyd and Greensaft cases. We conclude, therefore, that under the law of New Jersey as summarized at the outset of our discussion the plaintiff would not be entitled to claim, as widow, a share of the intestate personal estate of the deceased wage earner, Sherman. Accordingly it must be held that the decision of the Social Security Board was right and that the judgment of the district court reversing that decision was wrong.

The judgment of the district court will accordingly be reversed and the cause will be remanded with directions to affirm the decision of the Social Security Board.